# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| CHARLES THOMAS WEEMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CV409-065 |
| | ) |
| AL ST. LAWRENCE, | ) |
| CORRECTIONAL OFFICER | ) |
| GILBERG; and CORRECTIONAL | ) |
| OFFICER LOVETTE, | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

Inmate Charles Weems has filed four back-to-back 42 U.S.C. § 1983 actions challenging the conditions of his confinement at the Chatham County Detention Center. *Weems v. St. Lawrence*, No. CV409-062 (S.D. Ga. filed Apr. 1, 2009) ("Compl. 1"); *Weems v. St. Lawrence*, No. CV409-065 (S.D. Ga. filed Apr. 7, 2009) ("Compl. 2"); *Weems v. St. Lawrence*, No. CV409-075 (S.D. Ga. filed Apr. 22, 2009) ("Compl. 3"); *Weems v. St. Lawrence*, No. CV409-085 (filed May 6, 2009) ("Compl. 4"). The Court let Compl. 4 (alleging eye-care deprivation) stand on its own but consolidated Compl. 1 and Compl. 3 into Compl. 2 (this case) because issue-overlap in

those cases satisfied Fed. R. Civ. P. 42(a). Doc. 6.[1] All three of the consolidated cases named Al St. Lawrence as the sole defendant, so the Court warned Weems that those cases would be dismissed unless he alleged St. Lawrence's (or at least one defendant's) direct involvement in the conduct that allegedly violated his constitutional rights. Doc. 6 at 8-9.

Weems has since filed an Amended Complaint in which he includes allegations from Compl. 4. *See* CV409-065, doc. 11 at 3-4, 8, 24, 26, 27, 29, 30, 31, 32 (vision-care claims). Those allegations belong in Compl. 4, so they will be disregarded here. Meanwhile, he has restated his original, "consolidated" claims and adds two new ("direct involvement") defendants.

As the Court noted in its last Order, it is obligated to screen plaintiff's complaint under 28 U.S.C. § 1915A to determine whether he has stated at least one actionable claim. Doc. 6 at 3-4. Incorporating the § 1915A standards discussed in doc. 6 and in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009),[2]

---

[1] The original caption of Compl. 2 bore only Al St. Lawrence's name as the defendant. In the body of his Amended Complaint plaintiff has named "Correctional Officer Gilberg" and "Correctional Officer Lovette" as additional defendants -- all in both their individual and official capacities (hence, he is suing Chatham County, Georgia, too). Doc. 11 at 2, 3. His Amended Complaint omits "Correctional Officer" from Gilbert and Lovette. The Court has amended the caption; all subsequent filings shall conform.

[2] To survive a motion to dismiss, the complaint must contain sufficient factual

the Court concludes that Weems's amended complaint must be dismissed with prejudice.

Plaintiff, in that regard, only nominally complies with Fed. R. Civ. P. 8's short and plain statement requirement[3] in that he incorporates his 19-page, single-spaced, hand-written log of disorganized rants about every perceived slight, sarcastic remark, and disciplinary measure deployed against him. *See* doc. 11 at 1-9 (reflecting the semblance of a Rule 8-worthy complaint); *id.* at 15-33. Put another way, what Weems lacks in legal substance he attempts to compensate with in sheer quantity, both in page-count and *lawsuit*-count. He repetitiously complains that he is constantly handcuffed (though he discloses that he actually devised or acquired a homemade key to get out of them, doc. 11 at 16) and thus cannot properly exercise, shower, or otherwise maintain adequate hygiene. Doc. 11 at CM/ECF screen page 4-5 ¶¶ 3, 4; *id.* at 8 ¶ 19; *see also* doc. 11 at 15 ("Must shower with handcuffs and shackles"); *id.* at 16 ("I was out at yard when

---

matter, accepted as true, to state a claim to relief that is plausible on its face; a claim has "facial plausibility" when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for misconduct alleged. *Iqbal*, 129 S. Ct. at 1949-51.

[3] The rule requires "a short and plain statement of the claim showing that the

[prison officials] came and took me. I was searched and I had a homemade key to take the handcuffs off when I showered so I could wash my ass").

To restrain an inmate in any way, of course, is to apply force, and "[a] jailor's use of force against a pretrial detainee is [actionably] excessive under the Fourteenth Amendment [only] if it 'shocks the conscience.' The use of force does not 'shock the conscience' if it is applied in a good-faith effort to maintain or restore discipline. However, if the force is applied maliciously and sadistically to cause harm, then it does 'shock the conscience,' and is excessive under the Eighth or Fourteenth Amendments." *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009) (quotes and cites omitted); *see also id.* (Eighth Amendment decisional law is applicable to Fourteenth Amendment, jail-deprivation claims).

Jail officials may only deploy force, restrictions, and deprivations necessitated by jail-management with respect to pretrial detainees, for punishment is not authorized as to unconvicted detainees. *See, e.g.*, *Magluta v. Samples*, 375 F.3d 1269, 1274 (11th Cir. 2004) (allegations that pretrial detainee was confined under extremely harsh conditions, that he

---

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

was placed in solitary confinement, locked in an extremely small, closet-sized space, with minimal contact with other human beings for a prolonged time exceeding 500 days, and that harsh conditions were imposed solely for sake of punishment, stated claim that detainee suffered unconstitutional conditions of confinement, in violation of due process).

Weems's latest iteration of his claims reveals nothing shocking or violative of due process. Indeed, his own filings reveal that he is a disciplinary risk to the jail. *See, e.g.*, doc. 11 at 12 (jail memo rejecting his administrative appeal about being denied his eyeglasses and hygiene items, explaining that jail officials had found "altered eyeglasses and a large gem clip stretch[ed] out. Both of the items could have been used as a weapon against an officer and/or another inmate."); *id.* at 16 ("I was searched and I had a homemade key to take the handcuffs off. . . .").

For that matter, Eighth and Fourteenth Amendment protections afford plenty of operating space for the control of dangerously violent detainees and convicted criminals. *See, e.g., Key v. McKinney*, 176 F.3d 1083, 1086 (8th Cir. 1999) (use of handcuffs and shackles to restrain prisoner for 24 hours after he threw water on corrections officer did not violate Eighth Amendment); *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir.

1993) (shackling a dangerous inmate while showering does not violate Eighth Amendment).

Hence, "[r]estraints on an inmate do not violate the [Eighth] amendment unless they are 'totally without penological justification,' 'grossly disproportionate,' or 'involve the unnecessary and wanton infliction of pain.'" *Smith v. Coughlin*, 748 F.2d 783, 787 (2d Cir. 1984) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). An Eighth Amendment violation may be established where jail officials "fail[] to present any penological justification for using the restraints in question for seventy-two hours"), *Hawkins v. Byrd*, 2009 WL 1313269 at * 4 (E.D.Ark. May 12, 2009) but Weems alleges nothing approaching that here.

Instead, he is handcuffed if not shackled only when around other inmates (shower and exercise), which obviously curtails violence. Given his own showing of the jail's need to discipline him (weaponizing evidence found in his cell, homemade handcuff key found on him), this falls within the non-shocking range. *See, e.g., Carter v. Weidman*, 2009 WL 1212328 at * 3-4 (E.D.Mich. May 4, 2009) (unpublished) (rejecting claim that multiple-sclerosis afflicted inmate's placement in "top-of-bed" restraints for 30 hours violated Eighth Amendment; that restraint period included "regular medical

checks, bathroom breaks, and offerings of food and water" and inmate admitted to pre-restraint misconduct including "covering his window, refusing to take down the covering when so ordered, and waiting until . . . a female officer . . . came to his window to remove the covering and expose himself to her").

The rest of Weems's claims involve conditions of confinement and infringement of his liberty interest. An inmate demonstrates that the conditions of his confinement violate his constitutional rights by showing: (1) that the alleged deprivation is, "objectively, sufficiently serious," resulting "in the denial of the minimal civilized measure of life's necessities," and (2) that prison officials were deliberately indifferent to "an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hawkins*, 2009 WL 1313269 at * 3.[4]

---

[4] Courts often look to the provision of basic necessities and occasionally must draw some troublesomely subtle lines. *See, e.g., Townsend v. Fuchs*, 522 F.3d 765, 773-74 (7th Cir. 2008) (inmate's sleeping on moldy and wet mattress involved sufficiently serious prison condition to deny civilized measure of life's necessities, as required for Eighth Amendment claim); *Miller v. King*, 384 F.3d 1248, 1261-62 (11th Cir. 2004) (the plaintiff, a wheelchair-bound paraplegic, presented sufficient evidence to survive summary judgment on his claim that he had not been afforded the basic levels of humane care and hygiene); *Tinker v. Fries*, 2009 WL 89669 at * 3 (N.D.Ind. Jan. 12, 2009) (unpublished) ("Without more, simply being required to sleep on the floor with a mat for a few months is not cruel and unusual punishment. Tinker provides no

Here, Weems essentially brings a "laundry list" case by cataloging everything he considers to be "wrong" with the way the jail is run. *See, e.g.*, *Tinker* 2009 WL 89669 at * 1 (list of jail conditions inmate-plaintiff found unacceptable). His claims fail to meet *Farmer*'s criteria. For example, he complains that "there are flaps covering the windows [on the cell's] doors which are kept shut at all times. This does not allow for the inmate to see out or for the officers to see in as they pass by the cells. This is cause for serious risk to suicidal inmates or injured inmates suffering seizures, heat attac[k]s, strokes, etc." Doc. 11 at 5-6. And the back-of-the-cell windows are "fogged over." *Id.* at 6. The "total[l]y secluded" effect for months at a time (Weems alleges that he has been confined in this matter) can wreak "psychological effects" he deems to be "horrible and tormenting." *Id.* Weems is not qualified to opine on psychological damage and cites no authority on that score. Nor does he allege that he does not receive exercise

---

indication of what safety or health risks he was exposed to as a result of his sleeping arrangement, other than a suggestion that his cell mates could have stepped on him when they exited their beds. Even giving Tinker the benefits of the inferences he is entitled to at this stage, his allegations regarding his sleeping conditions do not state a claim under the Fourteenth Amendment.").

8

and exposure to sunlight on a regular basis.[5] Too, he admits that the flaps are opened for meals and showers, and are kept closed only 6 to 9 out of 24 hours. Doc. 11 at 6. There is nothing shocking about this.

Weems does allege, however, that at one point he "had not eaten for 10 days or slept for 14 days because the guards were tampering with my food and keeping me awake at night [to the point where Weems] was too weak to get off the floor" of his cell. Doc. 11 at 6. This *could* state a claim. *See Foster v. Runnels*, 554 F.3d 807, 813-19 (9th Cir. 2009) (prison official's conduct in allegedly depriving inmate of 16 meals over a 23-day period for his failure to remove paper from rear window of his cell was a sufficiently serious deprivation of a life necessity, as required to establish violation of

---

[5] Prison inmates (Weems is a jail detainee) can advance a liberty interest concerning a condition of confinement only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Thus, "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* at 485. In *Sandin*, thirty days of solitary confinement -- as compared to administrative segregation, protective custody, and normal "lockdown time" for inmates in the general population -- did not work a major disruption in [the inmate's] environment." *Id.* at 486.

Weems has alleged nothing exceeding the *Sandin* limits here, and courts (which apply Eighth and Fourteenth Amendment standards interchangeably in jail/prison cases) routinely apply *Sandin*'s rationale to jail cases. *See, e.g., Rivers v. Middle Rivers Regional Jail*, 2009 WL 1604991 at * 2 (W.D. Va. June 8, 2009) (unpublished); *Kidd v. Grogan*, 2009 WL 1033157 at * 3 (S.D. Ohio Apr. 16, 2009) (unpublished).

Eighth Amendment's prohibition against cruel and unusual punishment, notwithstanding official's argument that alleged deprivation was due to inmate's personal choice not to comply with prison policy; official failed to demonstrate how inmate's failure to remove paper from window jeopardized her safety or security during in-cell feeding). The Eleventh Circuit may not agree with the Ninth Circuit's standard, but the focus here is on whether Weems states a claim, not whether he ultimately will prevail on it.

Still, Weems must also allege that some defendant had direct involvement in any given civil rights deprivation, and this Court reminded him of that pleading requirement in its last order. In his amended complaint Weems connects "Capt. Gilberg" to his eyeglasses claim, doc. 11 at 3-4, and also alleges that "Sgt. Lovette" had ordered all of his personal belongings taken from him for roughly a month.[6] *Id.* at 4. But he simply

---

[6] That claim, by the way, also is not viable. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (unauthorized intentional deprivation of property by prison guard did not constitute violation of due process clause because meaningful postdeprivation remedies for the loss were available under state law); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir.1993); *Moore v. Monahan*, 2008 WL 111299 at * 6 (N.D.Ill. Jan 10, 2008) (unpublished); *see generally* 60 AM. JUR. 2D *Penal and Correctional Etc.* § 118 (May 2009). Generally, inmates have no property interest in any item that is classified as contraband. And if guards remove personal items from a prisoner's cell and send them to the inmate's home, for example, there is no taking of property for due process

fails to connect anyone in particular to this meal-deprivation allegation. (Indeed, he seems to imply that he simply refused to eat.)

Plaintiff also alleges that the handcuffing and shackling is implemented "at the behest of [jail management]." *Id.* And he alleges that Lovett ordered him into a "strip cell" (an action which itself does not cross the Eighth Amendment line), *id.* at 6-7, but other than that Weems does not

---

purposes, only possession, not ownership, is the deprivation at issue. A different result may obtain, however, where property is taken as calculated harassment. 60 AM. JUR. 2D. § 118. That is not alleged here, however, and in the meantime Weems is free to sue Roberts for conversion under state law. And since he has a post-deprivation remedy, he is not being denied his property without due process. *See Powell v. Dep't of Human Res.*, 918 F. Supp. 1575, 1582 (S.D. Ga. 1996).

Relatedly, Weems states no denial-of-hygiene claim. Such a claim has been recognized in the case law. *See, e.g., Whitington v. Ortiz*, 307 F. App'x 179, 189 (10th Cir. 2009) (prisoner's allegations that he was without hygiene items for substantial periods of time, that he suffered physical harm as a result, and that he complained personally to corrections staff, who rebuffed his requests, were sufficient to state § 1983 claim against staff for prolonged denial of hygiene products as a result of pursuit of constitutionally protected litigation with its associated expenses, in violation of Eighth Amendment, despite failure of complaint to use exact term "deliberate indifference"). Again, however, Weems fails to provide anything beyond general allegations here, much less specific allegations of direct involvement by any particular defendant. *See, e.g., Cummings v. Gusman*, 2009 WL 1649737 at * 3 (E.D.La. June 9, 2009) (unpublished) ("plaintiff does not allege, and there is no reason to believe, that Sheriff Gusman is personally responsible for providing the inmates with toilet paper, distributing their hygiene supplies, or personally participating in any of the other facets of their direct care challenged in this lawsuit. Moreover, while Sheriff Gusman is the supervisory official in charge of the prison system, that fact alone is not a basis to hold him liable for federal civil rights violations of his subordinates under any theory of strict liability or vicarious liability. Accordingly, plaintiff's individual-capacity claims against Sheriff Gusman must be dismissed") (footnotes omitted).

11

allege that the newly named defendants were involved in any actionable claim. *See also id.* at 8-10 (legal claim summary, and prayer for relief in which he seeks an injunction directing all three named defendants to give him his eyeglasses and "stop the handcuffing at exercise and showers").

Once again, Weems must demonstrate either that a defendant directly participated in the alleged constitutional deprivation or that there is some other causal connection between his acts or omissions and the alleged constitutional deprivations. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). Causal connections form when a supervisory official implements, fosters, or tolerates an official or unofficial policy or custom under which the violation occurred. *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986); *Fundiller v. Cooper City*, 777 F.2d 1436, 1442 (11th Cir. 1985); *see Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1541-42 (11th Cir. 1994) (Kravitch, J., concurring) (plaintiff must show that the supervisor's knowledge amounted to deliberate indifference to the asserted harm or risk, in that his knowledge was "so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights."). Weems has failed to allege that any of the defendants directly

participated in the constitutional deprivations[7] or implemented a policy or tolerated some custom giving rise to same. Thus, the Court should **DISMISS** this case **WITH PREJUDICE.**

**SO REPORTED AND RECOMMENDED** this  29th  day of June, 2009.

/s/ G.R. SMITH
**UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA**

---

[7] Weems states that he has sent grievances and letters to the jail's "upper ranking officers and also writing Internal Affairs." (Compl. 1 at 1.) But such notice alone is simply insufficient to establish direct participation, as there is no indication that St. Lawrence "drew the inference" that the constitutional-level deprivations placed Weems at "a substantial risk of serious harm." *See Farmer*, 511 U.S.at 837 (1994).

Similarly, to the extent he seeks to sue anyone in their official capacity, and thus Chatham County, Georgia, his case fails for lack of basic foundation pleadings. *See Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009) (city may only be held liable under § 1983 when injury caused was result of municipal policy or custom); *McDowell v. Brown*, 392 F.3d 1283, 1289-90 (11th Cir. 2004) (local government entities, while considered potentially liable "persons" under § 1983, cannot be liable on theory of respondeat superior, so "to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation."); *id.* at1290 ("In order for a plaintiff to demonstrate a policy or custom, it is generally necessary to show a persistent and wide-spread practice.") (quotes and cite omitted).

13